CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
6/22/2020
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA

Lynchburg Division

| | |
|---|---|
| URSULA WAGNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>LIBERTY UNIVERSITY, INC.,<br><br>Defendant. | Case No. 6:20CV00040<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiff Ursula Wagner, individually and on behalf of all other persons similarly situated, alleges on personal knowledge, investigation of counsel, and information and belief as follows:

### NATURE OF ACTION

1. Defendant Liberty University, Inc. ("Liberty") has violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA").

2. Liberty has been sued for violating the TCPA before. *See Williams v. Liberty University, Inc.,* No. 18-cv-1528 (N.D. Ill.). Despite litigation putting Liberty on notice that its calling practices violated the TCPA, Liberty has not taken steps to comply with the law.

3. Liberty placed telemarketing calls to Plaintiff and others similarly situated on their cellular telephones with the use of an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), without prior express consent.

4. Plaintiff brings this action for injunctive relief and statutory damages resulting from Liberty's conduct in violation of the TCPA and its implementing regulations.

### JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under the TCPA, a federal statute.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, Defendant's contacts with this District are sufficient to subject it to personal jurisdiction, and Defendant is headquartered in this District.

7. Venue is also proper in this District because Defendant has resided in this District at all times relevant to these claims and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

8. At all relevant times, Plaintiff Ursula Wagner resided in Chicago, Illinois.

9. Defendant Liberty is a Virginia nonstock corporation with a principal place of business in Lynchburg, Virginia.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA in an effort to regulate the growing telemarketing industry and safeguard the public's privacy by placing restrictions on unsolicited marketing calls.

11. Passage of the TCPA was prompted by "[v]oluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA."[1]

12. Accordingly, the TCPA regulates, among other things, the use of automatic telephone dialing systems ("ATDS" or "autodialers.")  Specifically, section 227(b)(1)(A)(iii) prohibits the use of an autodialer to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

13. According to the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls impose a greater nuisance and invasion of privacy than live solicitation calls, and can be costly and inconvenient.

---

[1] *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

The FCC has also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

14. The FCC has defined "prior express consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)

15. Under the TCPA, the existence of prior express consent is an affirmative defense that must be established by the defendant.

16. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[3]

17. This statutory language indicates that "the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called *or* (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)."[4]

18. This interpretation is supported by a series of longstanding FCC orders. The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) ("2003 FCC Order).

[3] 47 U.S.C. § 227(b)(1)(A)(iii).

[4] *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018) (emphasis supplied); s*ee also id.* at 1051 ("Although Congress focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers—a common technology at that time—language in the statute indicates that equipment that made automatic calls from lists of recipients was also covered by the TCPA.")

call."[5]  The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention." and that the statutory definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers."[6]

19. A 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[7] And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[8]

20. The TCPA provides a private right of action whereby consumers may recover $500 per violation and up to $1,500 for each willful or knowing violation. *See* 47 U.S.C. § 227(b)(3).

## FACTUAL ALLEGATIONS

21. Plaintiff Ursula Wagner is a "person" as defined by 47 U.S.C. § 153(39).

22. Ms. Wagner has never expressed an interest in attending Liberty University.

23. Nonetheless, Ms. Wagner received repeated robocalls from Liberty University, including on September 4, 5, 10, and 18, 2019.

24. At no time did Plaintiff provide prior express consent to Liberty University to make calls to her cellular telephone.

---

[5] 18 FCC Rcd at 14,143 n.31.

[6] *Id*. at 14,092.

[7] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008); *see also id.* (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective").

[8] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15,391, 15,399 (2012).

25. The calls were made to solicit attendance at Liberty University.

26. The calls were not necessitated by an emergency.

27. Plaintiff's privacy has been violated by the above-described robocalls from Liberty University. The robocalls were an annoying, harassing nuisance.

28. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines.

29. Based on the frequency of the calls to Ms. Wagner's cellular telephone, the click, pause and delay after the Plaintiff answered the call, the geographic location of the parties, and the nature of the solicitation, Liberty used an ATDS during its telemarketing calls.

30. Dialers of the type commonly used by telemarketers like Liberty have the capacity to store numbers to be called, the capacity to produce telephone numbers to be called, the capacity to generate telephone numbers to be called, and the capacity to dial telephone numbers automatically.

31. On information and belief, Liberty's dialing systems are predictive dialers. Like all predictive dialers, Liberty's dialers are a type of ATDS that used, stored, produced, generated, or otherwise entered phone numbers from a .csv file, spreadsheet, and/or a database to automatically make outgoing telephone calls.

32. A predictive dialer is an ATDS within the meaning of the TCPA, because it is equipment that, when paired with certain computer software, has the capacity to store or produce telephone numbers to be called and without human intervention to dial such numbers at random, in sequential order, and/or from a database of numbers.

33. Such systems can create dialing campaigns that cause calls to be made automatically to telephone numbers based on certain criteria and without requiring the user to dial the phone numbers and maintain an electronic record of each call made.

34. Being a predictive dialer, the dialing system used can also produce numbers using a sequential number generator and dial the numbers automatically.

35. The dialing system can do this by inputting a straightforward computer command.

36. Following a command, the dialing system will sequentially dial numbers.

37. In that scenario, the dialing system could dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

38. This would be done without any human intervention or further effort.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on behalf of herself and all other persons similarly situated.

40. Plaintiff proposes the following class definition, subject to amendment as appropriate:

> ATDS Class: All persons within the United States who, on or after June 23, 2016, received a non-emergency telemarketing call from Liberty University, or a third party calling on their behalf, to a cellular telephone through the use of the same or a similar dialing system used to call the Plaintiff.

Plaintiff represents, and is a member of, the ATDS Class. Excluded from the Class are Liberty and any entities in which Liberty has a controlling interest, Liberty's agents and employees, any Judge and Magistrate Judge to whom this action is assigned and any member of such Judges' staffs and immediate families, and claims for personal injury, wrongful death and/or emotional distress.

41. Plaintiff does not know the exact number of members in the Class, but based on the scope of Liberty's operations, Plaintiff reasonably believes that Class members number, at minimum, in the thousands. The joinder of all Class members is impracticable due to the size of the Class and the relatively modest value of each individual claim.

42. The identity of Class members can be readily ascertained from Liberty's own records.

43. Plaintiff and all members of the Class have been harmed by the acts of Liberty. This includes the aggravation, nuisance, and invasions of privacy that resulted from the receipt of telemarketing phone calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such phone calls. Furthermore, the phone calls interfered with Plaintiff's and other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components.

44. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

45. There are well-defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

    a. Whether the non-emergency calls made to Plaintiff's and Class members' cellular telephones used an ATDS;

    b. Whether Liberty can meet its burden of showing it obtained prior express written consent to make such calls to Plaintiff and Class members;

    c. Whether Liberty's conduct was knowing and/or willful;

    d. Whether Liberty is liable for damages, and the amount of such damages; and

    e. Whether Liberty should be enjoined from engaging in such conduct in the future.

46. As a person who received numerous and repeated telemarketing calls from Liberty, Plaintiff asserts claims that are typical of each Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests that are antagonistic to any member of the Class.

47. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including class action claims under the TCPA.

48. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Liberty to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Liberty is small because the statutory damages in an individual action for violation of the TCPA are relatively small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the elements of the claims are straightforward and focus on Liberty's conduct.

49. Liberty has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as wholes appropriate. Moreover, on information and belief, Plaintiff alleges that the violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## COUNT I
## Violations of the TCPA

50. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

51. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

52. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of $500 in damages for each and every text call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

53. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

54. The Defendant's violations were negligent and/or knowing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court grant Plaintiff and all Class members the following relief against Defendant:

A. Injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B. As a result of Defendant's violations of 47 U.S.C. § 227(b), Plaintiff seeks for herself and each Class member up to $1,500.00 in statutory damages for each and every violation of the TCPA;

C. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Class, as the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D. An award of reasonable attorneys' fees and costs to counsel for Plaintiff and the

Class; and

E. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

**PLAINTIFF URSULA WAGNER**

**By Counsel:**

*/s/ Michael B. Hissam*
Michael B. Hissam (VSB Bar #76843)
HISSAM FORMAN DONOVAN RITCHIE, PLLC
707 Virginia Street East, Suite 260
Charleston, WV 25301
t: (681) 265-3802
mhissam@hfdrlaw.com